**BARTON AGENCY, LTD., et al.**

v.

**UNITED STATES.**

**C.D. 3264; Protest Nos. 65/13134–25187, etc.**

United States Customs Court, First Division.

Jan. 29, 1968.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Morris Braverman and Brian S. Goldstein, New York City, trial attorneys), for defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge.

OLIVER, Senior Judge.

The merchandise the subject of these protest cases, which were consolidated at trial, was invoiced as "Sekiden shots" and they appear as small, round pieces of clay with pearl-like coatings. Classification was made under item 737.90 of the Tariff Schedules of the United States as parts of toys dutiable at the rate of 35 per centum ad valorem.

It is claimed that the shots are dutiable as ammunition under item 730.93 of the schedules at 18 per centum ad valorem or, alternatively, under item 735.12 as toy balls at 15 per centum ad valorem. An additional claim under item 536.15 was specifically abandoned.

The involved sections of the tariff schedules, together with pertinent head-

note information, are set forth in the TSUS as follows:

*Schedule 7, part 5, subpart E, headnotes 1 and 2:*

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—

\* \* \* \* \* \*

(iii) games and other articles in items 734.15 and 734.20, toy balls (items 734.09–.12), and puzzles and games in item 735.20 (see part 5D of this schedule).

2. For the purpose of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

*Classified under:*

Toys, and parts of toys, not specially provided for:

\* \* \* \* \* \*

Item 737.90 Other . . . . . .35% ad val.

*Schedule 7, part 5, subpart A, headnote 1:*

1. This subpart covers side arms, firearms, and other arms, whether designed for military, police, sporting, or other use; certain pistols, guns, and other devices which are not arms but which expend, or operate by means of, an explosive charge: bombs, grenades, torpedoes, mines, guided weapons and missiles, and similar munitions of war, and ammunition; and parts of the foregoing. \* \* \*

*Claimed under:*

Bombs, grenades, torpedoes, mines, guided weapons and missiles and similar munitions of war, and parts thereof; ammunition, and parts thereof:

\* \* \* \* \* \*

Item 730.93 Other . . . . . .18% ad val.

*Schedule 7, part 5, subpart D, headnote 1:*

1. This subpart covers equipment designed for indoor or outdoor games, sports, gymnastics, or athletics, but does not cover—

(i) arms and ammunition or fishing tackle (see subparts A and B of this part);

*Claimed under:*

Beachballs, play balls, toy balls, and other balls for games or sports, not provided for in the foregoing provisions of this subpart:

\* \* \* \* \* \*

Item 735.12 Other . . . . . .15% ad val.

10. *General Interpretative Rules.* For the purpose of these schedules—

\* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Plaintiffs' exhibit 1 represents a package of Sekiden shots in their imported condition and defendant's exhibit A is an example of a plastic Sekiden pistol which is also imported.

The material facts in this case are not in dispute and the evidence may be summarized as follows: The Sekiden shot is sold to novelty, toy, and sporting goods wholesalers as well as to a number of chain store type customers. It is especially designed for and exclusively used with the Sekiden gun which is a plastic toy pistol. The pistol, with or without the shot, is chiefly used for amusement by children and teenagers. The shot, which is composed of clay, is poured into an opening on the top of the gun and it is projected out of the barrel when the trigger is pulled. When the clay shot hits a hard surface, such as a window pane, it generally shatters. The gun may be accurate up to approximately 10 feet but it is not merchandised or sold as a target item. The Sekiden shot is exclusively distributed by the same dealers who handle the Sekiden pistol.

Plaintiffs appear not to have put the classification of the collector in dispute in the sense that they accept the enumeration of the articles as parts of toys within item 737.90. They argue, how-

ever, that by operation of headnote 1 in subpart E, part 5 of Schedule 7, supra, a provision for parts of toys is specifically excepted from the invasive quality of subpart E so that, if the imported merchandise constitutes ammunition under item 730.93 or toy balls under item 735.12, its enumeration as parts under item 737.90 would not bar classification under either claimed provision. It is further argued that such an interpretation of the effect of this headnote is consistent with the precept of General Interpretative Rule 10(ij) of the tariff schedules quoted supra.

The defendant appears to find no quarrel with the plaintiffs' interpretation of this headnote material but argues simply that the imports are not within the meaning of either term in the claimed provisions and that the presumption of correctness attending the collector's classification has, therefore, not been overcome.

The provision for ammunition and parts is new with the Tariff Schedules of the United States. The word "ammunition" is defined in Webster's Third New International Dictionary, 1966 unabridged edition, as follows:

1 *obs:* general military supplies 2 a: the various projectiles together with their fuzes, propelling charges, and primers that are fired from guns b: explosive military items (as grenades, bombs, and pyrotechnical material) c: any item or material that is thrown in fight or play (as spears or snowballs) 3: resources for attack or defense often in a contention or struggle in which one must engage

Both parties have referred to the Explanatory Notes of the Tariff Classification Study of 1960, schedule 7, prepared by the United States Tariff Commission. "Ammunition" is a term susceptible to many applications as indicated by the definition, supra, and we find it appropriate to consult legislative sources as an aid in reaching a determination on this issue. At pages 268 and 269 of the foregoing study, the following information appears:

### Subpart A—*Arms and Ammunition*

Five paragraphs in the Tariff Act of 1930 contain specific provisions for arms of one sort or another. The most important of these provisions are found in paragraph 365, which covers "shotguns, rifles, and combination shotguns and rifles," and in paragraph 366, which covers "pistols and revolvers". Paragraph 1513 contains a provision for "air rifles", paragraph 363 contains a provision for "sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal", and paragraph 1723 provides for "muskets, shotguns, rifles, pistols, and revolvers", which are "not designed to fire or capable of firing a fixed metallic cartridge or fixed shotgun shell". Other arms are dutiable for the most part under the "basket" provision for machines in paragraph 372 or for miscellaneous manufactures of metal in paragraph 397. With respect to ammunition, the tariff act contains a provision in paragraph 1517 for percussion caps, cartridges, and cartridge shells. Other ammunition falls under various "basket" paragraphs, but principally in paragraphs 372, 392 and 397.

All of these provisions for arms and ammunition are incorporated in subpart A, together with provisions for munitions of war and provisions for several closely related articles which are not arms.

The explanatory notes proceed to discuss the content of various provisions for sidearms and parts thereof. At page 272, it deals with the concluding arms provisions covering all other arms.

* * * Item 730.85 provides the rate of 35 percent ad valorem for arms which eject missiles by the release of compressed air or gas. This duty is the rate now applicable to air rifles

under paragraph 1513. The provision involves an increase in duty on air pistols and on certain other arms which eject missiles by the release of compressed air now dutiable as machines, not specially provided for, under paragraph 372 at the rate of duty of 11.5 percent ad valorem. Item 730.86 provides a rate of 11.5 percent ad valorem for arms which eject missiles by the release of a spring mechanism or rubber held under tension. Most of these articles are now entered under the "basket" provision for machines, not specially provided for, in paragraph 372 at this rate of duty. The item involves a reduction in duty on certain rifles which operate by the release of a spring mechanism but which are classified under the provision for "air rifles" in paragraph 1513 and are dutiable at the rate of 35 percent ad valorem. Both items 730.85 and 730.86 involve changes in duty on parts of "air rifles", which are now dutiable at the rate of 70 percent ad valorem under paragraph 1513. Imports of such parts have been negligible. Under the proposal, parts of "air rifles" which operate by means of compressed air or gas would be dutiable at the rate of 35 percent ad valorem, and parts of guns classified as "air rifles" but which operate by means of a spring mechanism would be dutiable at the rate of 11.5 percent ad valorem.

Item 730.88, a "basket" provision for all other arms, would include such miscellaneous products as boomerangs, sling shots, and blow guns. Imports, which are negligible, have probably fallen chiefly under paragraph 397. The duty of 19 percent ad valorem applicable to these articles under paragraph 397 is used for this item.

At page 273 of the study, the various provisions for ammunition are covered as follows:

Item 730.90 provides for cartridges, and empty cartridge shells. 730.91 for percussion caps, and 730.92 for gun wads at existing rates of duty.

Item 730.93 provides the rate of 19 percent ad valorem for bombs, grenades, torpedoes, mines, guided weapons, missiles, and similar munitions of war and parts thereof, and ammunition (other than that covered by items 730.90, 730.91, and 730.92). These articles are now chiefly dutiable in the "basket" provisions of paragraph 397 as miscellaneous manufactures of metal principally at the rate of 19 percent ad valorem, and under the "basket" provision of paragraph 372 as machines, not specially provided for, at the rate of 11.5 percent ad valorem. Lead shot, now dutiable under paragraph 392 at the rate of 1$\frac{5}{16}$ cents per pound will be included in this provision as parts of ammunition. For the bulk of the articles covered by this provision the duty is not an important factor affecting the volume of imports. The small changes in duty resulting from the combination of these several provisions into this item, therefore, are not expected to have any effect on the volume of imports.

■ Subsequent supplemental reports to this study indicate further changes in applicable duty rates, but none in structure. It is quite clear from the foregoing, therefore, that the prime legislative purpose behind the statutory arrangement of subpart A, part 5 of schedule 7 was to incorporate under one section articles that had been previously dutiable under sundry and unrelated paragraphs of the 1930 Tariff Act, Plaintiffs contend that this legislative history establishes that guns which fire such objects as BB's, pellets, and missiles are included under items 730.85, 730.86, and 730.88; that the objects themselves are dutiable under item 730.93 as ammunition; and that the Sekiden shots constitute missiles designed for ejection and they are, therefore, ammunition in the sense that BB's are.

■ We cannot subscribe to this conclusion. While it is plausible to say the

provisions for ammunition cover objects projected from or used in connection with articles enumerated under the arms provisions, we fail to see how such an argument supports plaintiffs' claim. Assuming without deciding that BB's and missiles ejected from air rifles are dutiable as ammunition, it does not follow that the clay shots the subject of the involved protests are similarly dutiable. The provision for air rifles in paragraph 1513 of the 1930 Tariff Act was recognized as distinct from and not modified by the adjective "toy". S. E. Laszlo v. United States, 27 CCPA 152, C.A.D. 76. It is explained in volume 15, part 2, page 30, of the 1948 Summaries of Tariff Information that air rifles are of two kinds, high-powered air rifles and BB guns that are actually powered by spring mechanisms, and that the manufacturers who make them also produce toy rifles and guns. Since it is conceded that the Sekiden pistols with which the Sekiden shots are used are toy pistols, there is no indication that they are included under the arms provisions and, therefore, no basis for concluding that the Sekiden shots are ammunition. In other words, if classification of articles as ammunition is related to the classification of the arm or instrument with which they are used, then the Sekiden shots have no entré into the ammunition provision of item 730.93.

Furthermore, the articles generally described in this subpart A are those capable of some sporting use, such as hunting, target shooting, etc., or those capable of some combative use in inflicting injury and causing harm or destruction.[1] It would be incongruous indeed to hold that Congress also intended classification thereunder of small clay shots which are used for ejection from toy pistols, and whose composition shattered

upon contact with any but a soft surface. We can find no such intention from the language of the statute or from legislative sources explaining that language.

As a final note on this issue, we observe that the ammunition provision of the "Brussels Nomenclature," one of two existing classification systems that caused the greatest influence on the arrangement of the revised tariff schedules[2] and one which has already been referred to in decisions of this court,[3] contains the following:

93.07—BOMBS, GRENADES, TORPEDOES, MINES, GUIDED WEAPONS AND MISSILES AND SIMILAR MUNITIONS OF WAR, AND PARTS THEREOF; AMMUNITION AND PARTS THEREOF, INCLUDING CARTRIDGE WADS; LEAD SHOT PREPARED FOR AMMUNITION.

Explanatory note (A) (3) —

Slugs, pellets (hollow, spherical, waisted, etc.) and darts for air, gas or spring guns, carbines or pistols, other than those for toys falling within heading 97.03.

This secondary source of tariff history merely supports the conclusion we have reached on the basis of the statutory language and legislative history of the involved tariff schedule provisions that the Sekiden shots in this case do not come within the meaning of the term "Ammunition" as provided for under item 730.93.

 We find even less merit in plaintiffs' alternative contention that the imported articles are dutiable as toy balls within item 735.12. The dictionary definition of the word "ball", as cited in

---

1. With certain named exceptions such as devices to project signal flares or designed to fire blank ammunition.

2. Tariff Commission Study, Submitting Report, November 15, 1960, page 8.

3. Pitney-Bowes, Inc. v. United States, 59 Cust.Ct.,C.D. 3116, appeal dismissed; F. L. Smidth & Company v. United States, 59 Cust.Ct.,C.D. 3141, appeal pending.

the briefs of both parties, reads as follows:

> ball 1: a round or roundish body or mass: as *a*: spherical or ovoid body of any kind for throwing, hitting, or kicking in games or sports * * * (Webster's Third New International Dictionary, Unabridged, 1961 edition [1963 printing])

All of the evidence, both testimonial and exhibit, points conclusively to the fact that the imported merchandise is used exclusively for ejection from toy pistols. There is absolutely no indication that it is used for throwing, hitting or kicking in games or sports, or that it is even suitable for such uses. Furthermore, plaintiffs' trade witness testified that the merchandise is sold as Sekiden shot and that it is handled exclusively by those who distribute the Sekiden pistol. The commercial and common meaning of tariff terms have been said to presumptively coincide so that general usage and trade denomination are elements of consideration in determining the classification of merchandise. Nylos Trading Company v. United States, 37 CCPA 71, C.A.D. 422. The mere fact that the imported articles have roundish or spherical bodies does not, as plaintiffs suggest, constitute a sufficient criterion for classification as balls, toy or otherwise. Although it has not been shown that the term "toy balls" is ambiguous, we have found nothing from either the legislative history or the judicial precedent cited in plaintiffs' brief that supports or is relevant to plaintiffs' position on this issue.

Based upon the record presented and for the reasons set forth herein, we find and hold that plaintiffs have failed to establish the correctness of either protest claim while failing to rebut the presumption of correctness attending the collector's action. The protests, therefore, are overruled and judgment will issue accordingly.

WATSON and BECKWORTH, Judges, concur.